UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 25-457 (NEB/EMB) |
| Plaintiff, | |
| v. | **DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE** |
| JEFFREY JOSUEE LOPEZ-SUAZO, | |
| Defendant. | |

Jeffrey Josuee Lopez-Suazo, by and through his attorney, Kate Adams, hereby respectfully requests that this case be dismissed with prejudice, due to the government's decision to detain him in immigration custody notwithstanding this Court's order releasing him on bond pending his criminal trial.

## I.  Introduction and factual background

On December 3, 2025, Magistrate Judge Bullard denied the government's request for detention and entered an order releasing Mr. Lopez-Suazo on bond. Notwithstanding the affirmed order of release, the United States Marshal Service ("USM") kept him in custody and transported Mr. Lopez-Suazo to the Sherburne County Jail directly following the detention hearing. The following day, December 4, 2025, a representative of the Sherburne County Jail confirmed via e-mail to undersigned counsel that Mr. Lopez-Suazo remained, at that time, in Sherburne County Jail custody as a USM inmate (*i.e.*, not in immigration or "ICE" custody, but in federal criminal custody).[1] Sometime between December 4 and December 5, the Sherburne County Jail "switched" Mr. Lopez-Suazo from USM to ICE

---

[1] To the extent that the facts contained in this section are premised on undersigned counsel's independent factual knowledge of events, they are sworn to by counsel in the attached declaration.

custody. Shortly thereafter, undersigned counsel became unable to locate Mr. Lopez-Suazo. He did not appear on the online ICE detainee locator website as expected. On Monday, December 8, undersigned counsel learned that Mr. Lopez-Suazo had been taken away from the Sherburne County Jail on a bus that same morning. The ICE detainee locator website was not updated on December 8 and continued to return no results related to Mr. Lopez-Suazo. Undersigned counsel conferred with the assigned Assistant U.S. Attorney in this matter, who indicated that Mr. Lopez-Suazo was likely still at Sherburne and being processed. Undersigned counsel was able to get in touch with a local ICE field office representative via phone, who confirmed that Mr. Lopez-Suazo had been removed from the Sherburne County Jail and was at that time in transport to the area of Harlingen, Texas. No reason was given for this transfer. Undersigned counsel was informed in this phone call by the ICE representative that it was "unusual" that the internal ICE system did not provide a specific facility to which he was being transferred. Undersigned counsel was informed that there are five facilities in the Harlingen, Texas area in which ICE detainees are housed.

Undersigned counsel began doing independent research on which facilities these might be, and placed phone calls to these facilities. Multiple phone numbers listed on the ICE website rang to disconnected phone numbers or unending busy tones.[2] Other phone numbers connected to automated phone answering systems with nonfunctional numeric options. Undersigned counsel was able to reach individuals on one or two phone lines, but

---

[2] On January 10, 2026, in the course of writing this motion, undersigned counsel again dialed the number on the ICE website for the Port Isabel detention center. This time, the number connected to an automated answering service. However, despite providing a numeric option to press regarding detained individuals, the extension was non-functional.

was unable to determine Mr. Lopez-Suazo was being held, or where he was headed. Undersigned counsel contacted local nonprofit groups in the Harlingen, Texas area, and local Minneapolis immigration attorneys, to try to assist with ideas for locating Mr. Lopez-Suazo.

On December 9, 2025, the ICE detainee locator website was updated and reflected that Mr. Lopez-Suazo was detained at the Port Isabel Processing Center, an infamous detention center in South Texas with a decades-long history of inadequate medical care, lack of access to lawyers, and abysmal living conditions.[3] Undersigned counsel again dialed the phone number on the ICE website to reach this facility, but was unable to get through to any person. On December 10, 2025, undersigned counsel created an online account on the Access Corrections website to communicate electronically with Mr. Lopez-Suazo, but his individual account was disabled so as not to allow messages or phone calls.

Undersigned counsel was informed that Mr. Lopez-Suazo was set to be transported back to Minnesota, still in ICE custody, to attend his scheduled court hearing on December 22, 2025.[4] He was not so transported. At the December 22 counsel-only hearing, government counsel conceded that it was ICE's intention "to bring him back for the hearing," and indicated that ICE would return him to Minnesota for the pendency of the

---

[3] *See* Neena Satija, "Port Isabel detention center, where immigrants will be sent before reuniting with children, has long history of problems", Texas Tribune, https://www.texastribune.org/2018/06/27/port-isabel-detention-center-long-history-problems-immigrants-reunific/

[4] Based on the government's own statements, undersigned counsel is deeply concerned that the government, in contravention of Mr. Lopez-Suazo's clear release order in this case, is nevertheless transporting and detaining him *for the purpose* of this criminal case, absent any writ or other authority.

3

criminal case. Undersigned counsel voiced concern that this intention was in contravention of Mr. Lopez-Suazo's release pursuant to the Bail Reform Act. Government counsel indicated that she expected Mr. Lopez-Suazo to be returned to Minnesota in ICE custody on December 26, 2025.

On or around December 26, 2025, Mr. Lopez-Suazo was transported, still in ICE custody, to the Freeborn County Jail in Albert Lea, Minnesota, approximately 100 miles (or about 1.5 hours) driving distance from the Twin Cities. This transport—which brought Mr. Lopez away from the southern border and back to the district in which his criminal case is proceeding—seems to clearly not be in furtherance of his deportation, but instead, appears to be the federal government continuing to detain Mr. Lopez-Suazo for the purpose of his federal criminal case against this Court's release order. Undersigned counsel was not notified of this transport. Undersigned counsel called the phone number, listed on the ICE website, which provided for attorneys to leave messages for inmates at the Freeborn County Jail. The number was out of service. Undersigned counsel called the Freeborn County Jail directly. On January 9, 2026, undersigned counsel was able to get through to someone at the Freeborn County Jail who schedules attorney visits. The county jail representative informed undersigned counsel that in order for an attorney to visit an inmate held at the jail in ICE custody, the attorney would first need to contact, and be approved, through ICE. A phone number was provided by the Freeborn County Jail representative to contact someone at ICE to get such approval. The individual told undersigned counsel that the process was: (1) the attorney should contact ICE at the number provided; (2) ICE would then contact the Freeborn County Jail, likely by e-mail, to provide the attorney's name as

an approved contact; (3) the attorney would then be able to call back the Freeborn County Jail, on the same number, and schedule an attorney visit.

Undersigned counsel called the number for ICE as provided by the Freeborn County Jail. An automated phone system answered, identifying the agency as DHS/ICE. Undersigned counsel selected numeric option 6, which purported to be the appropriate option to select "if you are calling about someone in custody." (After the experience detailed in the remainder of this paragraph, undersigned counsel repeated this call to determine if any other option was appropriate—none were). Undersigned counsel reached an individual at the dialed extension, explained the purpose of the call, and requested to be added to the list of approved persons to visit Mr. Lopez-Suazo in custody at the Freeborn County Jail. The ICE representative on the phone denied having ever heard of this approval system and said undersigned counsel should be free to visit an individual without such approval. The ICE representative declined undersigned counsel's request that someone at ICE please inform the Freeborn County Jail of the same, if true, as typically detention facilities will not take defense counsel's word, alone, to override apparent federal government policies. The individual stated: "I just work the property room, I don't know why all these calls get directed to me."

Mr. Lopez-Suazo has now been released in this case, but nevertheless detained by ICE, for 41 days. As of December 26, 2025, no Notice of Appearance had been filed to initiate removal proceedings. No ICE officer had talked to Mr. Lopez-Suazo about removal proceedings. Mr. Lopez-Suazo had not been brought before an immigration judge. On December 19, 2025, Mr. Lopez-Suazo, through counsel and in writing, conceded to and

demanded immediate deportation. He received no response.[5]

Throughout the 41-day process of attempting to have basic contact with Mr. Lopez-Suazo, undersigned counsel has also sought to obtain discovery related to Mr. Lopez-Suazo's above-captioned case. On December 15, 2025, the government made its initial disclosure in this matter. The disclosure, in its entirety, contained one police report and seven images. Undersigned counsel followed up with government counsel immediately to confirm whether this constituted the entirety of the government's planned production, and to make several discovery requests, including: additional law enforcement notes or reports; law enforcement communications regarding Mr. Lopez-Suazo and the immigration enforcement operation during which the alleged events charged in the Indictment occurred; any photos or videos related to the incident; "black box" information from the ICE officer's vehicle; and an opportunity to inspect the ICE officer's vehicle. Government counsel responded to confirm that "there is nothing else to disclose", but undersigned counsel's specific discovery requests have not been responded to or addressed, except that government counsel has agreed to let undersigned counsel access the ICE officer's vehicle.

It is within the government's power to stop or suspend the immigration proceedings now underway to permit the criminal matter to proceed without interference and with Mr. Lopez-Suazo released, as this Court has ordered. But the government has chosen not to do so. As a result, Mr. Lopez-Suazo finds himself facing a serious felony charge, being

---

[5] Undersigned counsel understands that Mr. Lopez-Suazo was brought before an Immigration Judge for the first time on December 30, 2025, and an Order of Removal was entered on that date. As of the time of this filing, undersigned counsel is not aware of any action taken by ICE to effectuate Mr. Lopez-Suazo's removal.

transported seemingly at random around the country, held far from counsel, where he is unable to meaningfully participate in preparing his defense, in violation of his Fifth and Sixth Amendment rights. Though the Court may lack authority to order Mr. Lopez-Suazo released from immigration custody at this juncture, it has unambiguous authority to manage the criminal case over which it is presiding. For the reasons discussed herein, the Court should dismiss the criminal case with prejudice.

## II.  Argument

### a. Legal Standard

If the Executive Branch chooses to pursue a criminal prosecution of an individual subject to an ICE detainer, but who has been ordered released in the pending criminal matter, then the defendant "must be promptly returned . . . and released pending trial on the pretrial release conditions previously imposed by [the Magistrate Judge] in accordance with the BRA." *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1180-81 (D. Or. 2012). "ICE does not, however, have the authority to detain [a defendant] for the purpose of avoiding the pretrial release provisions of the BRA." *Id*. at 1176. "Accordingly, the Executive Branch has a choice to make." *Id.* at 1179. "What neither ICE nor any other part of the Executive Branch may do . . . is hold someone in detention for the purpose of securing his appearance at a criminal trial without satisfying the requirements of the BRA." *Id.* The appropriate remedy for a violation of this is dismissal with prejudice. *Id.* at 1181; *United States v. Parias*, -- F.Supp.3d --, 2025 WL 3749406 (C.D. Cal. Dec. 27, 2025); *see also United States v. Boutin*, 269 F.Supp.3d 24, 26 (E.D.N.Y. 2017) ("[O]nce a criminal prosecution is initiated and the Government has invoked the jurisdiction of a federal district

court, the Bail Reform Act is controlling. When an Article III court has ordered a defendant released, the retention of a defendant in ICE custody contravenes a determination made pursuant to the Bail Reform Act. As such, the Government's criminal prosecution cannot proceed and must be dismissed with prejudice."); *United States v. Villatoro*-Ventura, 330 F.Supp.3d 1118, 1141 (N.D. Iowa 2018) ("[R]elief may be warranted in a particular case if it becomes clear that the Executive Branch is using ICE solely to hold a defendant for his or her federal criminal trial after the court has ordered release under the BRA. A policy of simply stashing a defendant in ICE custody, with no effort to proceed under the INA, would raise serious concerns as to the defendant's rights under the BRA.").

### b. *Application to case*

Mr. Lopez-Suazo has been released pending trial pursuant to the Bail Reform Act in this case. Yet the Executive Branch has conspired to keep him in custody. If the DOJ seeks to prosecute Mr. Lopez-Suazo for federal felony criminal charges that carry a statutory maximum penalty of 8 years in federal prison, then it needs to work with its sister agency to release Mr. Lopez-Suazo consistent with the Court's order, rather than conspiring to deprive Mr. Lopez-Suazo of his constitutional rights to access counsel and prepare his defense, his right to a Speedy Trial, and his right to release pending trial under the Bail Reform Act.

As detailed above, undersigned counsel has made multiple, futile efforts to contact and visit Mr. Lopez-Suazo over the past 41 days. The defense team has been unable to review *any* discovery with Mr. Lopez-Suazo, which in turn has limited its ability to investigate his case and draft motions. The Court's original motion filing deadline has now

passed, and because of the lack of access to Mr. Lopez-Suazo, undersigned counsel was unable to meet it. Were Mr. Lopez-Suazo properly released on bond, the defense team could have already reviewed the discovery with him in full. As it stands now, the defense remains at a standstill, unable to make meaningful progress towards preparing for trial because of Mr. Lopez-Suazo's remote detention.

The government's decision to continue to detain Mr. Lopez-Suazo in immigration custody, not pursue his removal from the country, but instead hold him for the purposes of this criminal proceeding in contravention of the BRA and this Court's order releasing him, has interfered with his Fifth and Sixth Amendment rights to counsel and to participate in his defense. The government's conduct has been intentional. The Court should dismiss this matter with prejudice.

### III.   Conclusion

If the Executive Branch elects to institute proceedings against Mr. Lopez-Suazo in immigration court, it may do so, but it must follow the law that governs the criminal proceedings it chooses to simultaneously pursue. It fails to do so here by continuing to detain Mr. Lopez-Suazo in a manner that interferes with his ability to access counsel and prepare for trial, in violation of the BRA and the Fifth and Sixth Amendments to the Constitution. The Court should dismiss the case with prejudice.

### IV.   Meet and Confer Statement

Undersigned counsel provides the following information pursuant to paragraph 8 of the Case Management Order, ECF No. 22: On Monday, January 12, 2026, at approximately 9:30 AM CST, undersigned counsel and counsel for the government met and conferred by

telephone regarding the instant motion. The parties discussed undersigned counsel's intention to file the motion, the legal basis for the motion, and a summary of the factual items presented herein. The parties are unable to reach consensus at this time regarding a resolution, and undersigned counsel believes the only appropriate remedy is dismissal with prejudice.

Dated:   January 13, 2026               Respectfully submitted,

                                        *s/Kate Adams*

                                        KATE ADAMS
                                        Attorney ID No. 1617650DC
                                        Attorney for Mr. Lopez-Suazo
                                        107 U.S. Courthouse
                                        300 South Fourth Street
                                        Minneapolis, MN 55415